JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
PATRICIA L. HURST (DC Bar #438882)
KARL J. FINGERHOOD (PA Bar #63260)
Senior Counsels
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
150 M Street, NE, Room 5.1123
Washington, DC 20002
(202) 307-1242
Patricia.Hurst@usdoj.gov
Karl.Fingerhood@usdoj.gov

JUDITH A. PHILIPS
Acting United States Attorney
RACHEL S. MORIYAMA (#3802)
Assistant United States Attorney
District of Hawaii
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
(808) 286-2890
Rachel.Moriyama@usdoj.gov

Attorneys for Plaintiff United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>    v.<br><br>KAANAPALI LAND, LLC, and<br>OAHU SUGAR COMPANY, LLC,<br><br>        Defendants. | **COMPLAINT** |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Department of Defense, Department of the Navy ("Navy"), Environmental Protection Agency ("EPA"), the Department of Interior ("DOI"), and the National Oceanic and Atmospheric Administration ("NOAA"), files this complaint and alleges as follows:

**NATURE OF ACTION**

This is a civil action brought against Kaanapali Land, LLC, and its wholly-owned bankrupt subsidiary, Oahu Sugar Company, LLC, pursuant to Sections 106

2

and 107 of the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607, for the recovery of response

costs associated with, and damages for injury to, destruction of, loss of, and loss of

use of natural resources and their services resulting from the release and threat of a

release of hazardous substances at and from the former Oahu Sugar pesticide and

herbicide mixing facility ("Site"), a parcel of approximately 3.5 acres in size,

which is part of the Pearl Harbor Naval Complex Superfund Site, and located at

21° 21' 44.7" north latitude and 157 ° 59' 23.7" west longitude, Waipio Peninsula,

Waipahu, Hawaii.

### JURISICTION AND VENUE

1.      This court has jurisdiction over the subject matter of this claim

pursuant to 28 U.S.C. §§ 1331, 1345, 1362, and 2201; and Section 113(b) of

CERCLA, 42 U.S.C. § 9613(b).

2.      Venue is proper in this district pursuant to Section 106(a) of

CERCLA, 42 U.S.C. §§ 9606(a), 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28

U.S.C. § 1391(b).

### DEFENDANTS

3.      Defendant Kaanapali Land, LLC ("KLLLC"), is a publicly-traded

Delaware limited liability company, with its principal place of business in Chicago,

Illinois. KLLLC is the reorganized entity resulting from the Joint Plan of

Reorganization of Amfac Hawaii, LLC (now known as KLC Land Company,

LLC), certain of its subsidiaries, and FHT Corporation under Chapter 11 of the

Bankruptcy Code, dated June 11, 2002. KLLLC is the successor to the entity

described in the General Allegations below as Old Oahu Sugar.

4.      Defendant Oahu Sugar Company, LLC, also referred to herein as New

Oahu Sugar, is a bankrupt wholly-owned subsidiary of KLLLC. New Oahu Sugar

filed a petition for liquidation under Chapter 7 of the Bankruptcy Code in April

2005. The bankruptcy proceeding was closed on December 17, 2019.

5.      The Defendants are "persons" as defined in Section 101(21) of

CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY BACKGROUND

6.      CERCLA was enacted in 1980 to provide a comprehensive

governmental mechanism for abating releases and threatened releases of hazardous

substances and other pollutants and contaminants and for funding the costs of such

abatement and related enforcement activities, which are known as "response

actions." 42 U.S.C. §§ 9604(a), 9601(25).

7.      Under Section 104(a)(1) of CERCLA:

Whenever (A) any hazardous substance is released or there is a substantial threat of
such a release into the environment, or (B) there is a release or substantial threat of

release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment . . . .

42 U.S.C. § 9604(a)(1).

8.      For CERCLA response actions and enforcement purposes, the

Administrator of EPA is the President's delegate, as provided in operative

Executive Orders, and, within certain limits, the Regional Administrators of EPA

have been re-delegated this authority, which has been further re-delegated to the

Director of the Superfund Division.

9.      Pursuant to Federal statutes, including Section 107(f)(2)(A) of

CERCLA, 42 U.S.C. § 9607(f)(2)(A), DOI, NOAA, and the Navy are trustees for

natural resources injured as a result of releases of hazardous substances caused by

Defendants at the Site.

10.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in

pertinent part that:

(1) the owner or operator of . . . a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . (4) . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for  – (A) all costs of removal or remedial

action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; . . . (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss resulting from such a release; . . . .

11.    Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in

pertinent part:

[W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may . . . secure such relief as may be necessary to abate such danger or threat . . . .

12.    Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), authorizes the

United States to bring an action to secure such relief as may be necessary to abate a

danger or threat at the Site.

13.    The term "natural resources" as defined in CERCLA means "land,

fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other

such resources belonging to, managed by, held in trust by, appertaining to, or

otherwise controlled by the United States, . . . and any State or local government."

42 U.S.C. § 9601(16).

## GENERAL ALLEGATIONS

14.    Old Oahu Sugar and, later, New Oahu Sugar (together, "Oahu Sugar")

operated sugar cane fields and associated facilities in the area of the Site from

approximately 1902 until the 1980s. Oahu Sugar leased the Site and other land

6

from the Navy to grow sugarcane. Oahu Sugar used the Site for the storage, mixing, and loading of pesticides, herbicides, and fertilizers. Oahu Sugar kept a number of aboveground storage tanks in the upland area of the Site. It used the lower area near the shore to store, mix, and load pesticides on crop dusting aircraft. These activities resulted in releases of hazardous substances at and from the Site.

15.     In or about 1962, Old Oahu Sugar was renamed "Second Sugar Company" and was merged into American Factors Ltd. Subsequently, a new subsidiary of American Factors Ltd. was formed with same name as Old Oahu Sugar ("New Oahu Sugar"). Through a series of corporate renamings, mergers, and bankruptcies, KLLLC became the successor in interest to the Old Oahu Sugar. Once formed, New Oahu Sugar began operating at the Site.

16.     On May 20, 1997, the Hawaii Department of Health ("DOH") conducted surface soil sampling at and around the former pesticide/herbicide mixing plant. The sampling results from the DOH effort indicated high concentrations of various dioxin congeners at the Site, including dioxin contamination as high as 1,530 parts per billion ("ppb") for 2,3,7,8-tetrachlorodibenzo-para-dioxin (2,3,7,8 TCDD) toxicity equivalents ("TEQ").

17.     Pentachlorophenol ("PCP") was also detected at the Site at levels between 8.4 and 35 parts per million ("ppm"). EPA lists PCP as a probable human

carcinogen.

18.   In August 2002, BEI Environmental Services, on behalf of New Oahu

Sugar, conducted a remedial investigation and prepared a remedial investigation

report for the former pesticide mixing area. The TEQ results of this soil sampling

effort ranged from 10.55 ppb to 992 ppb for dioxin. PCP was detected in surface

soils at levels between 37 ppb to 140,000 ppb.

19.   On March 28, 2005, EPA issued Unilateral Administrative Order No.

9-2005-08 against New Oahu Sugar to investigate Site contamination. New Oahu

Sugar failed to comply with the 2005 Unilateral Administrative Order and

promptly filed for Chapter 7 bankruptcy on April 19, 2005.

20.   On September 30, 2009, EPA issued Unilateral Administrative Order

No. 9-2009-14 against KLLLC to investigate Site contamination. KLLLC has been

performing response actions under that Unilateral Administrative Order since that

time.

21.   Defendants operated the Site at the time of disposal of hazardous

substances including dioxin and PCP.

22.   Releases of hazardous substances at and from the Site, including

dioxin and PCP, have resulted in the incurrence of response costs, and in injuries

to, destruction of, loss of, and the loss of use of natural resources and services from

natural resources, including but not limited to losses of services from the vegetative community and other terrestrial resources in and around the Site.

23.    The DOI, NOAA, and the Navy have each been designated a natural resource trustee pursuant to Section 107(f) of CERCLA, 42 U.S.C. § 9607(f) and Subpart G of the National Contingency Plan ("NCP"), 40 C.F.R. §§ 300.600 - 300.615. Under these authorities, and on behalf of the public, the Trustees have acted to assess damages for the injury to, destruction of, or loss of natural resources at the Site due to releases of hazardous substances from Defendant's facilities.

24.    The Trustees performed a pre-assessment screen to examine potential claims for aquatic and terrestrial injuries. As part of the pre-assessment screen, the Trustees examined the data available from the prior Site investigations as well as other data gathered in response to hazardous substances releases and threatened releases at and from the Pearl Harbor Naval Complex Superfund Site.  The screen indicated injury to terrestrial and aquatic resources.

25.    The Trustees' assessment of injuries to natural resources will be used to develop restoration actions or projects to compensate for the injury, loss or destruction of natural resources and resource services.

## FIRST CLAIM FOR RELIEF

### (Cost Recovery under CERCLA Section 107, 42 U.S.C. § 9607)

26.    Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27.    The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

28.    Hazardous substances were released at and from the Site into the environment within the meaning of Sections 101(22) and 101(8) of CERCLA, 42 U.S.C. § 9601(22) and (8).

29.    The United States has incurred and continues to incur costs in response to releases of hazardous substances at and from the Site into the environment within the meaning of Sections 101(25) of CERCLA, 42 USC § 9601(25).

30.    Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are jointly and severally liable to the United States for all unreimbursed response costs incurred by the United States with regard to the Site through the date of filing of this complaint together with accrued interest. The United States is also entitled to a declaratory judgment that the Defendants are liable for response costs that will be binding on any subsequent action or actions to

recover further response costs (other than such costs as are already being

reimbursed) to be incurred by the United States with respect to the Site.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief under CERCLA Section 106, 42 U.S.C. § 9606)

31.     Paragraphs 1 through 30 are realleged and incorporated herein by

reference.

32.     The President, through his delegate, has determined that there may be

an imminent and substantial endangerment to the public health or welfare or the

environment because of a release of hazardous substances or a threatened release

of hazardous substances at and from the Site.

33.     Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the

Defendants are jointly and severally liable to perform response actions selected for

the Site, which may be necessary to abate a danger or threat with respect to

groundwater, soil, surface water, and/or sediment contamination at the Site.

## THIRD CLAIM FOR RELIEF

### (Natural Resource Damages under CERCLA Section 107, 42 U.S.C. § 9607)

34.     Paragraphs 1 through 33 are realleged and incorporated herein by

reference.

35.     Each Defendant is liable under Section 107(a)(2) of CERCLA, 42

U.S.C. § 9607(a)(2), because it was the owner and/or operator of the Site at the

time hazardous substances were disposed of at and from the Site, and because, as

set forth above, the release of hazardous substances at and from the Site caused

injury to, destruction of, and loss of natural resources in surrounding lands and

other areas within the meaning of Section 107(a)(4)(C) of CERCLA, 42 U.S.C. §

9607(a)(4)(C).

36.    The United States has incurred and continues to incur costs related to

the assessment of the loss of natural resources for which it is trustee resulting from

the release of hazardous substances at and from the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)    On the First Claim for Relief, enter judgment against the Defendants

and in favor of the United States for all response costs incurred by the United

States in connection with the Site;

(2)    On the First Claim for Relief, enter a declaratory judgment against the

Defendants and in favor of the United States, pursuant to Section 113(g)(2) of

CERCLA, 42 U.S.C. § 9613(g)(2), that the Defendants are liable for response

costs, that will be binding on any subsequent action or actions to recover further

response costs to be incurred by the United States with respect to the Site;

(3)     On the Second Claim for Relief, enter judgment against the

Defendants and in favor of the United States ordering the Defendants to perform

the response actions identified in the 2005 and 2009 UAOs, and selected in any

decision document for the Site, in order to abate the conditions at the Site;

(4)     On the Third Claim for Relief, enter a judgment in favor of Plaintiff

against Defendants, of liability pursuant to CERCLA Section 107(a)(4)(C), 42

U.S.C. § 9607(a)(4)(C), for all damages for injury to, destruction of, and loss of

natural resources within the trusteeship of the United States resulting from the

releases of hazardous substances described herein, including the unreimbursed

past, present, and future costs of assessing such damages, the cost of restoring,

replacing, and/or acquiring the equivalent of those injured resources, and the past,

present, and future diminution in value of those resources pending restoration or

replacement, in an amount to be proved at trial;

(5)     Enter a judgment in favor of Plaintiff against Defendants for liability

for all costs of this action, including attorneys' fees; and

(6)     Award Plaintiff such other and further relief as this Court may deem

appropriate.

Respectfully Submitted,

FOR THE UNITED STATES OF AMERICA

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice

/s/ Patricia L. Hurst

_____
PATRICIA L. HURST
KARL J. FINGERHOOD
Senior Counsels
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

RACHEL S. MORIYAMA
Assistant United States Attorney
United States Attorney's Office
District of Hawaii

OF COUNSEL:

GREG BIRKENSTOCK
Senior Trial Attorney
Department of the Navy
Office of General Counsel
Naval Litigation Office
720 Kennon St. SE
Building 36, Room 233
Washington Navy Yard, DC 20374

REBEKAH REYNOLDS
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 9, ORC-3
75 Hawthorne St.
San Francisco, CA  94105

ERICKA M. HAILSTOCKE-JOHNSON
Attorney-Advisor
National Oceanic and Atmospheric Administration
U.S. Department of Commerce
General Counsel Office, Natural Resources Section
501 West Ocean Boulevard, Long Beach, CA 90802

LISA L. STEVENS
General Attorney
U.S. Department of the Interior
Solicitor's Office
Division of Parks and Wildlife, Environmental Restoration
1849 C Street, NW, Mail Stop 6313
Washington, DC 20240